IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| IMMIGRATION LAW GROUP, ET AL., ) | |
| ) | Case No. 4:03CV1226 RWS |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| DANNA MCKITRICK, P.C., ET AL., ) | |
| ) | |
| Defendants. ) | |

### DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

COMES NOW Defendant Danna McKitrick, P.C. ("DMPC"), through counsel, and states the following as its uncontroverted facts pursuant to Federal Rule of Civil Procedure 56:

### IN SUPPORT OF ALL MOTIONS TO DISMISS, FOR SUMMARY JUDGMENT AND PARTIAL SUMMARY JUDGMENT:

1. Immigration Law Group, LLP was a limited liability partnership formed in the State of Maryland on October 23, 1996. (Exhibit A, Certificate of No Good Standing from Maryland Department of Assessments and Taxation).

2. That entity was forfeited on October 7, 2002, nearly a full year prior to the date on which it filed suit in this Court as a plaintiff. (Exhibit A).

3. Visa Law Group, LLC was a professional limited liability corporation formed in the District of Columbia on April 16, 2001. (Exhibit B, Certificate from Government of the District of Columbia).

4. It was forfeited on November 10, 2003. (Exhibit B, Certificate from Government of the District of Columbia)

5. To date, the registrations of both plaintiffs, Immigration Law Group, LLP and Visa Law Group, LLC, have not been reinstated by their respective jurisdictions.   (Exhibits A and B).

6. "McNary, Morris & Smalley," as Plaintiffs use that term, is not, and has never been, a legal entity licensed or registered to conduct business in any jurisdiction and is similarly not, and has never been, registered as a fictitious name for either plaintiff in any jurisdiction. (Exhibits C, Certificates of No Record from Maryland Department of Assessment and Taxation, Government of the District of Columbia, and Missouri Secretary of State; Exhibit D, Deposition of David M. Morris, p. 150).

7. Gene McNary ("McNary") testified on deposition that "McNary, Morris & Smalley" never existed. (Exhibit E, Deposition of Gene McNary, p. 85 ).

8. McNary wrote the Clients herein, on "McNary, Morris & Smalley" letterhead, stating to them that he was the "senior partner" of the law firm of "McNary, Morris & Smalley." (Exhibit F, Letter to Peter Vollman).

9. The name "McNary, Morris & Smalley" appeared on the door of McNary's St. Louis office. (Exhibit D, Deposition of David M. Morris, p. 26-27).

10. McNary failed to produce any documents at his deposition establishing his status as a partner in "McNary, Morris & Smalley" as requested pursuant to a subpoena duces tecum, and specifically stated that he had none. (Exhibit E, Deposition of Gene McNary, p. 24 ).

11. The only financial documents Plaintiffs provided for McNary were tax documents related to plaintiff Immigration Law Group, LLP. (Exhibit G, K-1).

12. McNary has no financial interest in this litigation. (Exhibit E, Deposition of Gene McNary, p. 24 ).

13. David M. Morris ("Morris") testified on deposition that "McNary, Morris & Smalley" was a partnership and that Gene McNary was his partner. (Exhibit D, Deposition of David M. Morris, pp. 23-24).

14. Morris sent a memorandum to one of the Clients, Jose Romero, under letterhead of "McNary, Morris & Smalley, LLP." (Exhibit H, Memorandum to Dr. Jose Romero).

15. The limited liability partnership of "McNary, Morris & Smalley, LLP" was never created. (Exhibit D, Deposition of David M. Morris, pp. 24-25).

16. Morris referred to "McNary, Morris & Smalley" as "just the name of what we were doing business as." (Exhibit D, Deposition of David M. Morris, p. 149).

17. Plaintiffs named in this suit one hundred three (103) of DMPC's former clients ("Clients") who originally retained DMPC between 1995 and 1997 for the performance of immigration legal services, largely the result of the presence of Gene McNary ("McNary"), then a principal of DMPC. (Exhibit I, Affidavit of Danna McKitrick, ¶3).

18. McNary was a former Commissioner of the United States Immigration and Naturalization Service ("INS") and actively marketed his immigration services and expertise to the Clients, many of whom lived abroad, in conjunction with American Immigration Services, Inc. ("AIS"), a company that was in the business of assisting foreign nationals with the acquisition of immigration benefits with the United States. (Exhibit E, Deposition of Gene McNary, pp. 14, 52-55).

19. McNary entered into retainer agreements with the Clients on behalf of DMPC. (Exhibit I, Affidavit of Danna McKitrick, ¶4).

20. There are a number of versions of the Retainer Agreements DMPC entered into with the Clients, but the terms are substantially the same. (Exhibit I, Affidavit of Danna McKitrick, ¶5).

21. The retainer agreements provided that DMPC and, specifically, McNary, a former Commissioner of the INS, would provide legal services related to immigration processing under the EB-5 investor-based classification. (Exhibits J, K, L, M, and N, Retainer Agreements).

22. "Permanent resident status based on EB-5 eligibility is available to investors, either alone or coming with their spouse and unmarried children. Eligible aliens are those who have invested – or are actively in the process of investing – the required amount of capital into a new commercial enterprise that they have established. They must further demonstrate that this investment will benefit the United States economy and create the requisite number of full-time jobs

for qualified persons within the United States." (Exhibit O, Web pages from U.S. Citizenship and Immigration Services Web Site).

23. Each of the retainer agreements between DMPC and the Clients contemplated that DMPC would earn its fee upon the Clients' obtaining conditional lawful resident status and further provided that DMPC or McNary would represent the Clients two years after conditional lawful resident status approval in order to petition for the removal of that condition. (Exhibit I, Affidavit of Danna McKitrick, P.C., ¶6; Exhibits J, K, L, M and N, Retainer Agreements).

24. All but one of these agreements stated that the petition for removal work would be done for no additional fee. (Exhibit I, Affidavit of Danna McKitrick, P.C., ¶7).

25. Some retainers stated only that McNary would represent the Clients for that purpose. (Exhibits L, M and N, Retainer Agreements).

26. McNary assured DMPC that the services required to petition for the removal of the condition would be nominal. (Exhibit P, Deposition of David A. Gamache, pp. 90-91; Exhibit I, Affidavit of Danna McKitrick, P.C., ¶ 8).

27. All of the Clients herein obtained conditional lawful resident status while represented by DMPC. (Exhibit X, Fourth Amended Complaint, ¶13).

28. Gene McNary severed his relationship with DMPC on or about March 31, 1998. (Exhibit I, Affidavit of Danna McKitrick, P.C., ¶9).

29. Soon thereafter, McNary, Morris and Steve Smalley began holding themselves out to be a partnership under the name "McNary, Morris & Smalley." (Exhibit F, Letter to Peter Vollmer; Exhibit Q, Letter from David Morris to Office of Chief Disciplinary Counsel).

30. Beginning as early as May, 1998, McNary and "McNary, Morris & Smalley" entered into identical retainer agreements for legal services with each of the Clients. (Exhibit R, Retainer Agreement for McNary, Morris & Smalley),

31. McNary and "McNary Morris & Smalley" agreed to perform legal services without fee in these retainer agreements with the clients. (Exhibit R, Retainer Agreement for McNary, Morris & Smalley).

32. After his departure from DMPC, McNary requested that DMPC transfer the Clients' files to him. (Exhibit I, Affidavit of Danna McKitrick, P.C. ¶10).

33. DMPC informed McNary that it could not do so without the Clients' express written consent. (Exhibit I, Affidavit of Danna McKitrick, P.C., ¶11).

34. Thereafter, beginning in or about May, 1998, DMPC received form letters with boilerplate language, signed by each of the Clients and requesting that DMPC transfer their files and "funds" to McNary. (Exhibit I, Affidavit of Danna McKitrick, P.C., ¶12; Exhibit S, Letter from Chang Won Lee).

35. Upon the receipt of these written, signed requests, DMPC copied and prepared the files for transfer and transferred them to McNary. (Exhibit I, Affidavit of Danna McKitrick, P.C., ¶13).

36. DMPC also transferred the Clients' escrowed investment funds as the Clients directed. (Exhibit I, Affidavit of Danna McKitrick, ¶14).

37. DMPC did not forward any legal fees to McNary or "McNary, Morris & Smalley" because the Clients' fees were properly earned by DMPC prior to the time of transfer. (Exhibit I, Affidavit of Danna McKitrick, P.C., ¶15).

38. On November 6, 1998, McNary wrote DMPC indicating that he was taking steps to return the Clients' files to DMPC for processing of the petitions for removal of the Clients' condition from their conditional lawful resident status, despite the Clients' termination of DMPC and the transfer of their files. (Exhibit T, Letter from McNary to David Gamache).

39. On or about January 5, 1999, McNary arranged for three of the Clients' files to be deposited in DMPC's offices without DMPC's consent. (Exhibit I, Affidavit of Danna McKitrick, P.C., ¶16).

40. DMPC did not accept the files because the clients corresponding to them had previously terminated their attorney-client relationship with DMPC, DMPC had no authority to act on their behalf, and DMPC no longer had any relationship with McNary. (Exhibit I, Affidavit of Danna McKitrick, P.C., ¶17).

41. On March 15, 1999, Pavel Ossipov, one of the Clients herein, filed a complaint against one of DMPC's principals with the Missouri Supreme Court's Chief Disciplinary Counsel. (Exhibit I, Affidavit of Danna McKitrick, P.C., ¶18).

42. Mr. Ossipov was represented by David M. Morris. (Exhibit Q, Letter from David Morris to Office of Chief Disciplinary Counsel).

43. The facts and issues presented there were substantially identical to the facts and issues Plaintiffs present here, although no party made an allegation of any assignment at that time. (Exhibit I, Affidavit of Danna McKitrick, P.C., ¶19 ).

44. The Chief Disciplinary Counsel's investigation determined that there was no probable cause to believe there was any violation of the Missouri Rules of Professional Conduct. (Exhibit I, Affidavit of Danna McKitrick, P.C., ¶20; Exhibit U, Letter to Pavel Ossipov from Office of Chief Disciplinary Counsel).

45. On August 19, 1999, David M. Morris ("Morris") filed a Petition for Fee Dispute Resolution with the Committee on Fee Dispute Resolution of the Bar Association of Metropolitan St. Louis against DMPC and its attorneys on behalf of 174 of DMPC's former clients, many of whom are named in this suit. (Exhibit I, Affidavit of Danna McKitrick, P.C.,¶21).

46. The facts and issues presented there were substantially identical to the facts and issues Plaintiffs present here, although no party made an allegation of any assignment at that time. (Exhibit I, Affidavit of Danna McKitrick, P.C.,¶22).

47. These individuals did not further pursue their claims with the Committee on Fee Dispute Resolution. (Exhibit I, Affidavit of Danna McKitrick, P.C.,¶23).

**IN SUPPORT OF FIRST MOTION FOR SUMMARY JUDGMENT**

48. Defendant DMPC repeats, realleges and incorporates by reference its previous statements contained in paragraphs 1 through 47 herein.

49. Plaintiffs Immigration Law Group, LLP and Visa Law Group, LLC assert separate assignments of a right to collect from 103 of DMPC's former clients. (Exhibit X, Fourth Amended Complaint, ¶ 14).

50. Plaintiffs themselves have never had any contract, agreement or relationship with DMPC. (Exhibit I, Affidavit of Danna McKitrick, P.C.,¶24)

51. In 1999, "McNary, Morris & Smalley" attempted to obtain the Clients' signatures on a document entitled "Affidavit in Support of Assignment of Interest." (Exhibit D, Deposition of David M. Morris, pp. 100-101).

52. On or about February 27, 2002, DMPC entered into a Settlement Compromise and Mutual Release with Raulie Rodrigo (listed as number 113 on Exhibit A to Plaintiff's Fourth Amended Complaint) by which Rodrigo, and on behalf of all his assigns, released DMPC from all damages recoverable at law, in equity, or under any statute, rule or law, state or federal. (Exhibit I, Affidavit of Danna McKitrick, P.C., ¶25; Exhibit V, Settlement Compromise and Mutual Release).

**IN SUPPORT OF SECOND MOTION FOR SUMMARY JUDGMENT**

53. Defendant DMPC repeats, realleges and incorporates by reference its previous statements contained in paragraphs 1 through 52 herein.

54. Plaintiffs Immigration Law Group, LLP and Visa Law Group, LLC assert separate assignments of a right to collect from 103 of DMPC's former clients. (Exhibit X, Fourth Amended Complaint, ¶ 14).

55. Plaintiffs themselves have never had any contract, agreement or relationship with DMPC. (Exhibit I, Affidavit of Danna McKitrick, P.C.,¶24).

56. The last date on which DMPC had any involvement whatsoever with the Clients or their files was the date on which DMPC transferred the Clients' files to McNary. (Exhibit I, Affidavit of Danna McKitrick, ¶26).

57. DMPC transferred ninety-four (94) of the Clients' files to McNary by August 25, 1998. (Exhibit I, Affidavit of Danna McKitrick, ¶27).

58. The names of those ninety-four (94) clients are listed on Exhibit W to Defendant's Statement of Uncontroverted Facts. (Exhibit I, Affidavit of Danna McKitrick, P.C., ¶28; Exhibit W)

### IN SUPPORT OF FIRST ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THIRTY-SIX (36) CLIENTS NAMED IN EXHIBIT J1.

59. Defendant DMPC repeats, realleges and incorporates by reference its previous statements contained in paragraphs 1 through 58 herein.

60. The services to be provided by DMPC to the Clients involved in this litigation was governed solely by a retainer agreement for legal services. (Exhibit I, Affidavit of Danna McKitrick, ¶29).

61. Thirty-six (36) of the Clients entered into retainer agreements with DMPC substantially the same as the retainer agreement, attached hereto as Exhibit J. (Exhibit J, Retainer Agreement; Exhibit I, Affidavit of Danna McKitrick ¶30).

62. The names of the clients corresponding to these retainer agreements are listed on Exhibit J1 attached hereto. (Exhibit I, Affidavit of Danna McKitrick, P.C., ¶31).

63.     The only differences among these retainer agreements are the names and addresses of the clients and the amounts of the fee. (Exhibit J, Retainer Agreement; Exhibit I , Affidavit of Danna McKitrick, ¶32).

64.     Said retainer agreements state that the third and last portion of the retainer fee "shall be paid to [DMPC] when you obtain your immigrant visa approval at the U.S. Consulate, if processing abroad, or at the U.S. Immigration and Naturalization Service, if processing within the United States." (Exhibit J, Retainer Agreement).

65.     Each of the thirty-six (36) clients named in Exhibit J1 obtained immigrant visa approval, also known as conditional lawful resident status approval, as a result of DMPC's legal services. (Exhibit I, Affidavit of Danna McKitrick, P.C., ¶33).

66.     These retainer agreements also state: "You understand that within two years of obtaining conditional lawful permanent resident status, you must petition for removal of the conditional status. [DMPC] will represent you for purposes of removing the condition and there will be no additional fee, nor will there be, however, a return of the fees earned under this agreement in obtaining conditional lawful permanent resident status in the event the conditional status is not removed." (Exhibit J, Retainer Agreement).

67.     Prior to the date on which they were eligible for the removal of the condition from their conditional lawful resident status, all of the thirty-six (36) clients named in Exhibit J1 terminated their attorney-client relationships with DMPC. (Exhibit I, Affidavit of Danna McKitrick, P.C., ¶34).

68.     DMPC would have represented the thirty-six (36) clients named in Exhibit J1 for purposes of removing the condition from their conditional lawful resident status for no additional fee pursuant to the retainer agreements had the clients not terminated their attorney-client relationships with DMPC. (Exhibit I, Affidavit of Danna McKitrick, P.C., ¶35)

## IN SUPPORT OF SECOND ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO 14 CLIENTS NAMED IN EXHIBIT K1

69. Defendant DMPC repeats, realleges and incorporates by reference its previous statements contained in paragraphs 1 through 68 herein.

70. The services to be provided by DMPC to the Clients involved in this litigation was governed solely by a retainer agreement for legal services. (Exhibit I, Affidavit of Danna McKitrick, P.C., ¶29).

71. Fourteen (14) of the Clients entered into retainer agreements with DMPC substantially the same as the retainer agreement attached hereto as Exhibit K. (Exhibit K, Retainer Agreement; Exhibit I, Affidavit of Danna McKitrick, ¶36).

72. The names of the clients corresponding to these retainer agreements are listed on Exhibit K1, attached hereto. (Exhibit I, Affidavit of Danna McKitrick, P.C., ¶37).

73. The only differences among these retainer agreements are the names and addresses of the clients and the amounts of the fee. (Exhibit I, Affidavit of Danna McKitrick, P.C., ¶38).

74. These retainer agreements provide that the fee for DMPC's legal services was "deemed earned by the law firm upon issuance of the Conditional Immigrant Investor Visa at the time of Consular Processing or Adjustment of Status." (Exhibit K, Retainer Agreement).

75. Each of the fourteen (14) clients named in Exhibit K1 obtained a Conditional Immigrant Investor Visa, also known as conditional lawful resident status, as a result of DMPC's legal services. (Exhibit I, Affidavit of Danna McKitrick, P.C., ¶39).

76. These retainer agreements also state: "You understand that within two years of obtaining conditional lawful permanent resident status, INS regulations require the filing of a petition for removal of the conditional status. [DMPC] will represent you for purposes of removing the condition and there will be no additional fee." (Exhibit K, Retainer Agreement ).

77. Prior to the date on which they were eligible for the removal of the condition from their conditional lawful resident status, each of the fourteen (14) clients named in Exhibit K1 terminated their attorney-client relationships with DMPC. (Exhibit I, Affidavit of Danna McKitrick, P.C., ¶40).

78. DMPC would have represented the fourteen (14) clients named in Exhibit K1 to Defendant's Statement of Uncontroverted Facts for purposes of removing their conditions for no additional fee pursuant to the retainer agreements had the clients not terminated their attorney-client relationships with DMPC. (Exhibit I, Affidavit of Danna McKitrick, P.C., ¶41).

**IN SUPPORT OF THIRD ALTERNATIVE
MOTION FOR PARTIAL SUMMARY JUDGMENT
AS TO 15 CLIENTS NAMED IN EXHIBITS L1, M1 AND N1**

79. Defendant DMPC repeats, realleges and incorporates by reference its previous statements contained in paragraphs 1 through 78 herein.

80. The services to be provided by DMPC to the Clients involved in this litigation was governed solely by a retainer agreement for legal services. (Exhibit I, Affidavit of Danna McKitrick, P.C., ¶29).

81. Thirteen (13) of the Clients entered into retainer agreements with Concordia Consulting Limited, of Taiwan, substantially the same as the retainer agreement attached hereto as Exhibit L. (Exhibit L, Concordia Retainer Agreement; Exhibit I, Affidavit of Danna McKitrick, P.C., ¶42).

82. The names of the clients corresponding to these retainer agreements are listed on Exhibit L1, attached hereto. (Exhibit I, Affidavit of Danna McKitrick, P.C., ¶43).

83. The only differences among these retainer agreements are the names and addresses of the clients and the amounts of the fee. (Exhibit I, Affidavit of Danna McKitrick, P.C., ¶44).

84. One (1) of the Clients entered into the retainer agreement with DMPC which is attached hereto as Exhibit M. (Exhibit M1, DMPC Retainer Agreement; Exhibit I, Affidavit of Danna McKitrick, P.C., ¶45).

85. The name of the client corresponding to this retainer agreement is listed on Exhibit M1, attached hereto. (Exhibit I, Affidavit of Danna McKitrick, P.C., ¶46).

86. James Z. Liang is another attorney also named in that document. (Exhibit M, Retainer Agreement).

87. One (1) of the Clients entered into a retainer agreement with Shanghai Fudan V&L Business Consultation Co., Ltd., of Taiwan (Exhibit N, Fudan Retainer Agreement; Exhibit I, Affidavit of Danna McKitrick, P.C., ¶47 ).

88. The name of the client corresponding to this retainer agreement is listed on Exhibit N1. (Exhibit I, Affidavit of Danna McKitrick, P.C., ¶48).

89. The retainer agreement with Concordia Consulting Limited, attached hereto as Exhibit L, clearly states that "McNary will represent you for purposes of removing the condition and there will be no additional fee..." (Exhibit L, Concordia Retainer Agreements)

90. The DMPC retainer agreement, attached hereto as Exhibit M, clearly states: "McNary and Liang will represent you for purposes of removing the condition and there will be an additional fee of $5,000.00 for removal of the conditional status." (Exhibit M, Retainer Agreement).

91. The Fudan retainer agreement, attached hereto as Exhibit N, clearly states: "The fees paid under this Agreement cover the petition to remove the condition and McNary will represent you for such purpose." (Exhibit N, Fudan Retainer Agreement).

DANNA MCKITRICK, P.C.

BY:    /s/ Frederick M. Switzer, III
Frederick M. Switzer, III, #4514
Jeffrey R. Schmitt, #498759
150 North Meramec, Fourth Floor
St. Louis, MO 63105-3907
(314) 726-1000/(314) 725-6592 fax
ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and accurate copy of the foregoing was served upon the following by operation of the Court's electronic filing system, this 28th day of February, 2005:

Matthew J. Sauter
Deeba, Sauter, & Herd
3415 Hampton Ave.
St. Louis, MO 63139

                                          /s/ Frederick M. Switzer, III