UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IMMIGRATION LAW GROUP, LLP, et al, )
)
    Plaintiffs, )
) No. 4:03CV01226 RWS
v. )
)
DANNA MCKITRICK, P.C., et al, )
)
    Defendants. )

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT, AND DEFENDANT'S ALTERNATIVE MOTIONS FOR PARTIAL SUMMARY JUDGMENT

Defendant has filed three separate Motions for Summary Judgment which it has labeled as follows:

1. Defendant's Motion for Summary Judgment;
2. Defendant's Motion to Dismiss or for Summary Judgment; and
3. Defendant's Alternative Motions for Partial Summary Judgment.

The issues contained in the Motions for Summary Judgment overlap and thus, rather than filing a separate Memorandum in Opposition to each Motion, Plaintiffs will address their opposition to each Motion in one document.

Defendant Danna McKitrick, P.C.'s (hereafter "DM") Motions for Summary Judgment involve the following issues:

1. That Plaintiff Immigration Law Group d/b/a McNary, Morris, and Smalley (hereafter "MMS") (a) did not obtain an assignment from each of the individual clients, (b) has no other basis for standing to bring this suit against DM, and (c) thus is precluded from proceeding with all three remaining counts of its Fourth Amended Complaint (these counts are for Quantum Meruit, Money Had and

1

Received, and Breach of Contract);

2. That the statute of limitations on MMS' claims for Quantum Meruit, Money Had and Received, and Breach of Contract ran prior to MMS' filing of the present lawsuit on August 29, 2003;

3. That Plaintiffs Immigration Law Group, L.L.P. and Visa Law Group, L.L.C. have no basis to claim standing based on assignments made to "McNary, Morris, and Smalley"; and

4. That DM is entitled to Partial Summary Judgment on the claims of 65 individual clients because the DM Retainer Agreements allegedly contain unambiguous language to the effect that DM's fee was fully earned despite the fact that DM did not perform the legal services associated with preparing and filing the Form I-829.

I. <u>DM IS NOT ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIM THAT MMS DOES NOT HAVE A VALID ASSIGNMENT FROM EACH OF THE INDIVIDUAL CLIENTS BECAUSE (A) MMS' CLAIM FOR QUANTUM MERUIT IS NOT BASED UPON AN ASSIGNMENT; AND (B) MMS DOES HAVE A VALID ASSIGNMENT FROM EACH CLIENT IN SUPPORT OF ITS CLAIM FOR BREACH OF CONTRACT.</u>

Although MMS' claim for Breach of Contract is based upon its assignment of the right to collect unearned legal fees from each individual client, DM incorrectly assumes that its claim for Quantum Meruit is also based upon assignment. MMS' claim for Quantum Meruit is not based upon the terms of the Retainer Agreement, but is instead based upon the claim of Quantum Meruit, a quasi-contractual claim. As MMS stated in its Memorandum in Support of its Motion for Partial Summary Judgment on the Quantum Meruit claim, the essential elements to prove this claim are as follows:

1. Benefit conferred by one party on another;
2. Appreciation or recognition by the receiving party of the fact that what was conferred was a benefit; and
3. Acceptance and retention of the benefit under circumstances that would render the retention inequitable.

See <u>Lucent Technologies, Inc. v. Mid-West Electronics, Inc.</u>, 49 S.W.3d. 236, 241

(Mo.App.W.D. 2001). MMS is not claiming the right to Quantum Meruit based upon assignment, but is instead claiming the right based upon the work it performed, the benefit it conferred on DM, DM's appreciation and recognition of the benefit (see the testimony of DM principal David Gamache attached to MMS' Motion for Partial Summary Judgment), and DM's acceptance and retention of the benefit under circumstances that would render the retention inequitable.

With regard to DM's claim that MMS' Retainer Agreement with each individual client does not contain a valid assignment, MMS has already briefed its belief that it received a valid assignment from each individual client by virtue of its Retainer Agreement which authorized MMS to "recover and retain fees that [each individual client] had paid to [DM] and to apply the fees to the legal services provided by [MMS]". See Exhibit 12. MMS will not waste the Court's time by restating its argument here, but refers the Court to pages 4 and 5 of its Memorandum in Support of its Motion for Partial Summary Judgment.

DM suggests in its Motion for Summary Judgment that the fact that MMS forwarded to the individual clients a document entitled "Affidavit in Support of Assignment" bolsters DM's case that there was no assignment. MMS asserts that the fact that it forwarded a document entitled "Affidavit in Support of Assignment of Interest" further supports its argument that the Retainer Agreement contained a valid assignment. If MMS believed that the Retainer Agreement did not contain a valid assignment, it would not have labeled the subsequent document "Affidavit in Support of Assignment of Interest" and would have instead labeled it an Assignment. The language of the Affidavit clearly indicates MMS' intent and belief that its Retainer Agreement already contained a valid assignment. The purpose of the Affidavit was

simply to obtain a supplementary document from each individual client which the immigration lawyers at MMS felt they may need in pursuing litigation against DM to collect the money owed.

II. A. <u>MMS' CLAIM FOR BREACH OF CONTRACT IS NOT BARRED BY THE STATUTE OF LIMITATIONS BECAUSE (1) MMS IS SUING ON A WRITTEN CONTRACT FOR THE PAYMENT OF MONEY AND THUS, THE APPLICABLE STATUTE IS TEN YEARS PURSUANT TO SECTION 516.110 R.S.MO. 1994; AND ALTERNATIVELY (2) THE RECORD CONTAINS DISPUTED MATERIAL FACTS REGARDING THE DATE OF ACCRUAL OF MMS' BREACH OF CONTRACT ACTION WHICH PRECLUDES SUMMARY JUDGMENT.</u>

Missouri statutory law contains both a ten-year and five-year statute of limitations for actions based upon Breach of Contract. Pursuant to Section 516.110 R.S.Mo. 1994 "an action upon any writing, whether sealed or unsealed, for the payment of money or property must be brought within ten years". Section 516.120 R.S.Mo. 1994 states that "all actions upon contracts, obligations, or liabilities, express or implied, except those mentioned in Section 516.110..." must be brought within five years. Finally, Section 516.100 R.S.Mo. 1994 provides the following with respect to the accrual of the cause of action:

> Civil actions, other than those for the recovery of real property, can only be commenced within the periods prescribed in the following sections, after the causes of action have been accrued; provided, that for the purposes of section 516.100-516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, **but when the damage resulting therefrom is sustained and is capable of ascertainment**, and, if more than one item of damage, than the last item, so that all resulting damage may be recovered, and full and complete relief obtained.

Section 516.100 R.S.Mo. 1994.

The DM Retainer Agreements provide for the payment of money by each individual client in exchange for the promised legal services. The amount of money payable for the legal

4

services is clearly contained within each individual Agreement. Thus, the DM Retainer Agreement constitutes a writing for the payment of money and is subject to the ten-year statute of limitations. The fact that the exact amount owed for preparing and filing the form I-829 cannot be ascertained solely by reference to the Agreement is immaterial and does not preclude the application of the ten-year statute. See Community Title Co. v. Stewart Title Guaranty Co., 977 S.W.2d. 501,502 (Mo.Banc. 1998); Hughes Development Co. v. Omega Realty Co., 951 S.W.2d. 615,617 (Mo.Banc. 1997); Collins D.C. v. Narup, 57 S.W.3d. 872 (Mo.App.E.D. 2001).

The DM Retainer Agreements call for the payment of specific funds in exchange for the legal work. Although the Agreements do not contain a specific dollar amount for the legal work associated with preparing and filing the Form I-829 and admittedly extrinsic evidence must be presented to show this amount, this fact does not preclude the application of the ten-year statute contained in 516.110 pursuant to Missouri case law.

Alternatively, if this Court believes that the five-year statute contained in Section 516.120 R.S.Mo. controls, MMS' Breach of Contract action would still not be barred because MMS has presented material facts which show that the cause of action for the individual clients did not accrue until after August 29, 2003. See Exhibit 15, Affidavit of David Morris at paragraphs 3-10 and Exhibit 17. Although many of the clients' files may have been transferred to MMS prior to August 29, 1998 (five years prior to the date of the filing of this lawsuit), the vast majority of the legal work performed by MMS did not occur until after August 29, 1998. See Exhibit 15 at paragraphs 3-10 and Exhibit 17. The value of the legal services associated with preparing and filing the Form I-829 could not be ascertained until the last act constituting the legal services for each individual client had been performed. See Exhibit 15 at paragraphs 3-

10. Thus, the Breach of Contract cause of action did accrue on the date that each file was transferred to MMS, but instead accrued when the legal work was performed and MMS could properly ascertain the amount of work that went into each file and the subsequent value of the services.

II. B.  <u>DM'S MOTION FOR SUMMARY JUDGMENT ON THE BASIS THAT MMS' CLAIM FOR QUANTUM MERUIT IS BARRED BY THE FIVE-YEAR STATUTE OF LIMITATIONS CONTAINED IN SECTION 516.120 R.S.MO. SHOULD BE DENIED BECAUSE MMS' DAMAGES WERE NOT CAPABLE OF ASCERTAINMENT UNTIL AFTER AUGUST 29, 1998.</u>

MMS admits that the five-year statute is applicable to the Quantum Meruit claim. However, MMS has presented material facts which show that its damages were not capable of ascertainment at any time prior to August 29, 1998. As stated above, the work performed by MMS in the preparation and filing of the I-829 for each of the individual clients did not take place until after August 29, 1998. MMS could not ascertain the value of the legal services and the benefit provided to DM for its Quantum Meruit claim until such time as the legal work was performed.

III.  <u>DM IS NOT ENTITLED TO SUMMARY JUDGMENT ON ITS CLAIM THAT PLAINTIFFS LACK STANDING TO BRING THIS ACTION BECAUSE THE LEGAL CONCEPT OF "STANDING" IS A CONSTITUTIONAL DOCTRINE REGARDING ONE'S RIGHT TO CHALLENGE A GOVERNMENT ACTION WHICH IS NOT APPLICABLE TO THE FACTS OF THIS CASE.</u>

Paragraph 13 of Defendants' Motion to Dismiss or Motion for Summary Judgment claims that Plaintiffs Immigration Law Group, L.L.P. and Visa Law Group, L.L.C. have no basis to claim standing based on assignments made to "McNary, Morris, and Smalley". MMS believes that DM's defense of "standing" is misplaced. "Standing" is a constitutional doctrine

regarding one's right to challenge a governmental action. See Lucas v. Lucas, 946 F.2d. 1318,1322 (8th Cir. 1991). In Lucas, an executrix of an estate, after assigning herself personally the estate's right to recover the value of missing securities brought a diversity action against her son and a securities brokerage firm alleging conversion of estate securities. The individual Defendant claimed that the executrix lacked standing to bring the conversion claim because she did not sue in her role as executrix. Id. at 1322. In denying the claim of lack of standing, the Lucas Court held that the issue was not one of standing, but was rather one of identifying the "real party in interest". Id. Furthermore, the Lucas Court held that it would not consider the "real party in interest" issue because it had been waived by the failure to assert the defense. Id. at 323. Similarly, in United Healthcare Corp. v. American Trade Insurance Co., Ltd., 88 F.3d. 563 (8th Cir. 1996), the 8th Circuit held that a "real party in interest defense" is waived if not presented in a timely fashion.

Rule 17(a) of the Federal Rules of Civil Procedure states that "every action shall be prosecuted in the name of the real party in interest". Such a requirement is in place "to protect the defendant against a subsequent action by the party actually entitled to recover, and to insure generally that the Judgment will have its proper effect as res judicata. Fed.R.Civ.P. 17(a), Advisory Committee Note. Because the requirements in Rule 17(a) are for the benefit of the defendant, Courts have held that an objection on "real party in interest" grounds should be raised with reasonable promptness in the trial Court proceedings. United Health Care Corp., 88 F.3D. at 579. If the real party in interest defense is not raised in a timely or seasonable fashion, the general rule is that the objection is deemed waived. Id.

This case has been on file for 19 months. Extensive written discovery and depositions

have been conducted. To date, DM has not asserted a "real party in interest" defense. Thus, the issue of "real party in interest" is not before the Court.

However, even if the Court were to consider a "real party in interest" defense, *sua sponte*, MMS believes that this action has been brought in the name of the "real party in interest." DM's Motion claims that Plaintiffs have named Immigration Law Group, L.L.P. and Visa Law Group, P.L.C.C. as Plaintiffs. This is not correct. Plaintiffs brought the case as "Immigration Law Group, L.L.P. d/b/a McNary, Morris, and Smalley" and "Visa Law Group, P.L.C.C."

Immigration Law Group (ILG) is a Maryland limited liability partnership formed in the State of Maryland in 1996. The original partnership consisted of David Morris and Steve Smalley. See Exhibit 19 at paragraph 2. Gene McNary joined the ILG partnership in April/May, 1998. See Exhibit 19 at paragraph 2. After McNary joined the firm, ILG began holding itself out public as McNary, Morris, and Smalley. Exhibit 19 at paragraph 5. Prior to the time the partnership began holding itself out as McNary, Morris, and Smalley, each partner received an annual schedule K-1, (Partner's Share of Income, Credits, Deductions, etc.) listing himself as a partner and ILG as the name of the partnership. Exhibit 19 at paragraph 6. All bank accounts were in the name of ILG, all vendor accounts were in the name of ILG, all fees were received in the name of ILG, and all employees were ILG employees and were paid through ILG bank accounts. Exhibit 15 at paragraph 15. ILG's decision to begin using the name McNary, Morris, and Smalley after Mr. McNary joined the firm did not in any way change the structure of ILG or the way ILG was conducting business. Exhibit 19 at paragraph 8. Each partner continued to receive a schedule K-1 in the name of the individual partner with ILG listed as the partnership name. Exhibit 19 at paragraph 9. All vendor accounts continued to be in the name of

ILG, all bank accounts continued to be in the name of ILG, and all employees continued to be employees of ILG. Exhibit 15 at paragraph 17. MMS never had a separate Tax I.D. Number and never filed a tax return separate from ILG. Exhibit 19 at paragraph 10. From 1998-2000, the partners of ILG were David Morris, Stephen Smalley, and Gene McNary. Exhibit 2, paragraph 5. During this period of time, ILG was doing business as McNary, Morris, and Smalley and had offices in Washington, D.C. and St. Louis, Missouri. Exhibit 2, paragraph 6. In 2001, the assets and liabilities of ILG were restructured into Visa Law Group, P.L.L.C. Exhibit 2, paragraph 7. The new entity kept the same address, staff, and clients. Exhibit 2, paragraph 7.

MMS has presented material facts showing that during the 1998-1999 time period when the I-829 work was performed for the individual clients which are the subject of this lawsuit, MMS and ILG were the same entity. Accordingly, this lawsuit was brought in the name of Immigration Law Group, L.L.P. d/b/a "McNary, Morris, and Smalley". While DM is correct in its claim that ILG was dissolved in 2002, DM is incorrect that this prevents ILG from filing a subsequent action in its name. Section 9A-307 of the Maryland Revised Uniform Partnership Act (UPA) provides that "a partnership may sue and be sued in the name of the partnership". Furthermore, Section 9(a)-307(f) of the UPA specifically states that a partner of an L.L.P. is not a proper party to a proceeding by or against the L.L.P. except for certain exceptions not applicable here.

Under Maryland law, a partnership is not terminated on dissolution, but continues until winding up of partnership affairs is completed. Berk v. Sherman, 682 A.2d. 209 (M.D.Ct.App. 1995). The right to wind up the affairs of the partnership includes the duty and power to litigate claims for the partnership that arise out of transactions occurring prior to dissolution. Id. at 214.

A partnership may sue in its own name following dissolution or prior to the completion of the wind-up of partnership affairs. Id. at 217.

In fact, when the Maryland General Assembly abolished the prohibition against suing a partnership in the firm name alone with the introduction of Maryland Code section 6-406, the legislature specifically included a provision that allowed the partnership to sue in its own name even after dissolution. See Hartford Accident and Indemnity Co. v. Scarlet Harbor Associates Limited Partnership et al., 674 A.2d. 106,131 (M.D.Ct.App. 1996). Section 6-406 provides as follows:

> (a) an unincorporated association, joint stock company, or other group which has a recognized group name may sue or be sued in the group name on any cause of action affecting the common property, rights, and liabilities of the group.
> (b) an action under this section:
> (i) has the same force and effect with respect to the common property, right, and liabilities of the group as if all members of the group were joined; and
> (ii) **does not abate because of any change of membership in the group or its dissolution**.

Thus, under Maryland Law, ILG has the right to bring an action in its name after dissolution. This action has been brought to collect monies owed ILG that were earned by ILG prior to the time of the 2002 dissolution. ILG, d/b/a MMS, is the real party in interest under these circumstances.

Finally, Rule 17(a) provides that "no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder, or substitution of the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action has been commenced in the name of the real party in interest". If the Court believes that

10

DM has somehow raised a "real party in interest" defense and that ILG d/b/a MMS is not the real party in interest, Plaintiffs respectfully request the Court to allow them to add MMS as a distinct party Plaintiff and/or allow them to add one of the individual partners to pursue the claim.

IV. <u>DM IS NOT ENTITLED TO SUMMARY JUDGMENT ON THE CLAIMS INVOLVING 65 INDIVIDUAL CLIENTS OUTLINED IN ITS ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT BECAUSE (A) MMS' QUANTUM MERUIT CLAIM IS A QUASI-CONTRACTUAL CLAIM WHICH IS NOT BASED ON THE LANGUAGE IN THE RETAINER AGREEMENTS, BUT IS INSTEAD BASED UPON THE BENEFIT WHICH MMS CONFERRED UPON DM; (B) THE AGREEMENTS FOR 51 OF THE 65 INDIVIDUAL CLIENTS DO NOT UNAMBIGUOUSLY STATE THAT THE FEE IS EARNED UPON THE ISSUANCE OF THE CONDITIONAL IMMIGRANT INVESTOR VISA; (C) ALLOWING DM TO RETAIN ALL LEGAL FEES ON THE 14 RETAINER AGREEMENTS WHICH DO DEEM THE FEE TO BE "EARNED" SHOULD NOT BE ENFORCED AS WRITTEN BECAUSE THE LANGUAGE PENALIZES THE INDIVIDUAL CLIENTS AND THWARTS THEIR RIGHT UNDER MISSOURI LAW TO TERMINATE THEIR ATTORNEY WITHOUT CAUSE AT ANY TIME; AND (D) DM IS A PARTY TO THE 14 RETAINER AGREEMENTS WHEREIN DM ALLEGES THAT MCNARY ALONE WAS A PARTY AND, IN ANY EVENT, DM COLLECTED THE FEES FOR THE WORK ENCOMPASSED BY THOSE AGREEMENTS.</u>

(A) <u>MMS' QUANTUM MERUIT CLAIM IS A QUASI-CONTRACTUAL CLAIM WHICH IS NOT BASED ON THE LANGUAGE IN THE RETAINER AGREEMENTS, BUT IS INSTEAD BASED UPON THE BENEFIT WHICH MMS CONFERRED UPON DM.</u>

MMS' Quantum Meruit claim is not based upon the language of the Retainer Agreements, but is instead a quasi-contractual claim with the following essential proof elements under Missouri law:

1. benefit conferred by one party on another;
2. appreciation or recognition by the receiving party of the fact that what was conferred was a benefit; and
3. acceptance and retention of the benefit under circumstances that would render the benefit inequitable.

See <u>Lucent Technologies, Inc. v. Mid-West Electronics, Inc.</u> 49 S.W.3d. 236,241

11

(Mo.App.W.D. 2001). The elements of a Quantum Meruit claim do not require proof of a written contract or the interpretation of language in a written contract.

MMS has already outlined its proof of the elements of a Quantum Meruit claim in its Memorandum in Support of its Motion for Summary Judgment and refers the Court to that Memorandum. Additionally, MMS adds that the undisputed material facts show that its work in preparing and filing the I-829 had value. DM has hired an expert in this case, Ron Klasko, who has prepared a report indicating his opinion that the value of the I-829 was approximately 10% of the legal fees collected for each case. See Exhibit 20, report of Ron Klasko. Additionally, Mr. Gamache testified in his deposition that he believed that the services had value. See Exhibit 13, deposition of David Gamache, at page 90[1].

(B) THE AGREEMENTS FOR 51 OF THE 65 INDIVIDUAL CLIENTS DO NOT UNAMBIGUOUSLY STATE THAT THE FEE IS EARNED UPON THE ISSUANCE OF THE CONDITIONAL IMMIGRANT INVESTOR VISA.

DM's Alternative Motion for Partial Summary Judgment presents the contracts of 65 individual clients. For all of these individual clients, DM asserts that the Retainer Agreements clearly and unambiguously state that the fee is deemed "earned" upon the issuance of the Conditional Immigrant Investor Visa. MMS disputes that the Agreements of 51 of these clients contain this language. See Exhibits J, L, M, and N.

The above-referenced 51 Agreements do state that "there will be no additional fee for the I-829 services" and that no fees will be returned in the event that the I-829 Petition is not successful. MMS suggests to the Court that this language does not unambiguously state that all

---

[1] MMS presents the testimony of Mr. Klasko and Mr. Gamache only for the purpose of showing the Court that even DM cannot dispute that the I-829 services had value. MMS points out that it does not agree with the amount of the value assessment by Mr. Klasko or Mr. Gamache.

12

fees are "earned" upon the issuance of the Conditional Immigrant Investor Visa. In fact, it is reasonable to conclude that the language stating "there will be no additional fee" means that the fee associated with the preparation and filing of the I-829 has already been calculated into the total fee. Additionally, if DM believed that the funds were indeed "already earned" at the time of the issuance of the Conditional Immigrant Investor Visa, there would have been no need to place funds in an escrow or reserve account as DM did in this case. See Exhibit 14 and Exhibit 19, Affidavit of Stephen Smalley, at paragraph 18.

    (C)    <u>ALLOWING DM TO RETAIN ALL LEGAL FEES ON THE 14 RETAINER AGREEMENTS WHICH DO DEEM THE FEE TO BE "EARNED" SHOULD NOT BE ENFORCED AS WRITTEN BECAUSE THE LANGUAGE PENALIZES THE INDIVIDUAL CLIENTS AND THWARTS THEIR RIGHT UNDER MISSOURI LAW TO TERMINATE THEIR ATTORNEY WITHOUT CAUSE AT ANY TIME</u>.

MMS admits that 14 of the Retainer Agreements did contain language indicating that the fee "shall be deemed earned by the law firm upon the issuance of the Conditional Immigrant Investor Visa....". However, as analyzed in its Memorandum in Support of its Motion for Summary Judgment, MMS believes that this language should not be enforced as written. The majority of courts and ethics committees addressing the issue of non-refundable Retainer Agreements have looked beyond the terminology by which the fee is characterized and have determined that fee advances are not earned when paid and therefore, must be deposited into the firm's trust account. <u>Iowa Supreme Court Order of Professional Ethics and Conduct v. G. Richard Apland</u>, 577 N.W.2d. 50 (Iowa 1998). Additionally, allowing DM to declare the fee earned upon the issuance of the Conditional Immigrant Investor Visa is inconsistent with DM's own testimony that the I-829 services had value. See Exhibit 20 and Exhibit 13 at page 90.

Finally, allowing DM to retain all the funds when it did not perform all the work

13

encompassed by the Agreement thwarts the individual client's unquestionable right under Missouri law to terminate the attorney-client relationship at any time. If DM were allowed to keep the entire fee, each individual client would be compelled to continue representation by DM or be forced to pay twice for the same service. As stated in its Memorandum in Support of its Motion for Summary Judgment, MMS believes that this is in contravention of Missouri Supreme Court Rule 4.1.16 which requires an attorney to refund any advance payment that has not been earned upon that attorney's termination.

    (D)    <u>DM IS A PARTY TO THE 14 RETAINER AGREEMENTS WHEREIN DM ALLEGES THAT MCNARY ALONE WAS A PARTY AND, IN ANY EVENT, DM COLLECTED THE FEES FOR THE WORK ENCOMPASSED BY THOSE AGREEMENTS.</u>

DM also claims that it is entitled to Partial Summary Judgment for the 14 clients listed on Exhibits L1 and N1 because it was allegedly not the party with whom these clients contracted. MMS asserts that this claim is without merit. The Agreements are attached as Exhibits L, M, and N state in the first paragraph that Gene McNary is a "U.S.-licensed attorney with Danna, Soraghan, Stockenberg, and McNary, P.C. (McNary)". Thus, the explicit language of the Agreements define McNary and DM as the same entity and state that it will refer to the firm as McNary throughout the Agreement. Also the Agreement attached as Exhibit M is on DM letterhead. Furthermore, DM has accepted and retained funds paid by the clients listed in Exhibits L1, M1, and N1. See Exhibit 4, answer 2(c). To allow DM to escape payment alleging that it was not a party to the Agreement when they accepted and retained the funds called for in the Agreement would be unjust.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that Defendants' Motion for Summary

Judgment, Motion to Dismiss or for Summary Judgment, and Alternative Motion for Partial Summary Judgment, be denied.

Respectfully submitted,

**DEEBA SAUTER HERD**

By: /S/ Matthew J. Sauter
Matthew J. Sauter #33486
Attorneys For Plaintiffs
3415 Hampton Avenue
St. Louis, MO 63139
Telephone: (314) 781-3222
Facsimile: (314) 781-2726

**CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2005, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon Frederick M. Switzer, III, 150 N. Meramec, 4th Floor, St. Louis, MO 63105.

By: /S/ Matthew J. Sauter