UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| IMMIGRATION LAW GROUP, LLP, and<br>VISA LAW GROUP, L.L.C., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) Case No. 4:03CV01226 RWS<br>) |
| DANNA MCKITRICK, P.C., et al., | )<br>) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter is before me for a ruling after a bench trial. A number of foreign nationals engaged Defendant Danna McKitrick, P.C. ("DMPC")[1] to perform immigration legal work and paid a retainer to DMPC. Before all their immigration work was completed these clients terminated DMPC as their counsel. The clients then hired Plaintiff Immigration Law Group, LLP ("ILG") to complete the work for which DMPC had been retained. The clients assigned their rights to ILG (d/b/a McNary, Morris & Smalley) to collect any unearned fees from DMPC that remained from the clients' retainers. ILG asserts that it was doing business as McNary, Morris & Smalley and has brought this lawsuit to collect any unearned retainer fees from DMPC. DMPC asserts that all of the retainer fees were earned at the time that the clients terminated their relationship with DMPC and transferred their files to McNary, Morris & Smalley.

Because I find that DMPC fully earned the retainer fees for most of these clients at the time that the clients terminated their relationship with that firm I will enter judgment in favor of DMPC. I also find that the applicable statute of limitations bars the claims for the majority of

---

[1] The other named defendants in this matter are different legal incarnations of DMPC.

retainer fees at issue including those clients whose fees were not deemed to be earned when they transferred their files to McNary, Morris & Smalley.

***Background***

*Overview of the case*

This case arises from the transfer of clients and their files from one law firm to another. The dispute in this case began when Gene McNary, a principal at DMPC left that firm and associated his law practice with ILG. After this move, a large number of clients requested DMPC to transfer their files and any remaining retainer fees to an entity named McNary, Morris & Smalley. ILG asserts that McNary Morris & Smalley is a d/b/a for ILG. At the time the clients terminated DMPC as their counsel, DMPC had completed most, but not all, of the immigration work for these clients. DMPC declined to refund any of the fees because it deemed the fees as fully earned for the work it performed for these clients.

McNary, Morris, & Smalley completed the immigration work for each client. ILG asserts that it received an assignment from these clients (via McNary, Morris & Smalley) to pursue a refund of any unearned portion of their retainers from DMPC. In the Complaint ILS sued to recover these unearned fees pursuant to four legal theories: Count I- quantum meruit / unjust enrichment; Count II - conversion; Count III - money had and received; and Count VI - breach of contract.

The conversion claim was dismissed from the case before trial. After the trial Plaintiffs dismissed their claim for money had and received. I find that Plaintiffs have abandoned any independent claim for "unjust enrichment" by failing to brief the issue in their pre or post trial briefs. The only legal theory briefed by Plaintiffs under Count I was for quantum meruit. At

issue are the claims of one hundred and six clients who ILG asserts are entitled to a refund of unearned legal fees from DMPC under the theories of quantum meruit and breach of contract.

*Evidence from the trial*

Gene McNary was the Commissioner of the United States Immigration and Naturalization Services from 1989 to 1993. McNary became a principal at the DMPC law firm in 1994. At some unspecified point in time McNary was approached by the American Immigration Services, Inc. ("AIS") to provide immigration legal work on behalf of AIS's clients under the Immigration and Naturalization Service's EB-5 Lawful Permanent Resident Visa Program. AIS wanted McNary to process immigration files for alien investors under the EB-5 program.

Beginning in 1996, McNary entered into retainer agreements with many but not all of the EB-5 program clients on behalf of DMPC. Approximately 202 clients were originally referred to McNary by AIS. It appears that the processing of these clients' immigration work was done in an assembly-line style fashion. AIS identified the clients overseas and prepared all of the background documentation in support of the EB-5 program applications. Several different versions of retainer agreements were used by AIS. These agreements were obtained from the clients by AIS and forwarded to McNary. Most of the clients paid a retainer fee of either $10,000 or $7,500 to DMPC. AIS paid additional fees to DMPC on behalf of many of these clients. McNary and DMPC did not deal directly with these clients in securing the retainer agreements or the retainer fees. The central issue in this lawsuit is when the retainer fees were deemed to be earned by DMPC.

The following work needed to be done for each client under the EB-5 program:

(a) The preparation and filing of Form I-526 "Petition for Immigrant Investor" with the

INS;

(b) Attending the Visa Interview at the United States Embassy or local INS office resulting in the issuance of the two-year conditional Green Card; and

(c) The preparation and filing of Form I-829 "Petition to Remove Two-Year Condition" with the INS. This petition had to be filed in a window of time twenty-one months after the two-year conditional visa was issued in step (b).

AIS supplied DMPC with all of the information and documents to complete step (a) and (b). AIS set up the interviews both nationally and internationally that had to be attended by an attorney from DMPC to complete step (b). Step (b) entailed briefing the client for the upcoming interview and attending the interview which typically lasted thirty minutes. AIS was also to supply the documentation in support of step (c). The completion of step (c) by DMPC was simply a matter of filling out forms with information supplied by AIS and attaching documentation supplied by AIS. According to John Guest, an associate attorney at DMPC who performed the work on step (c), it took him approximately four to five hours to complete step (c). David M. Morris, the founder of Plaintiff ILG, also estimated that the it took approximately five hours to complete step (c). (Def.'s Ex. Z Letter of March 31, 1998 from Morris to McNary at p. 3)

DMPC asserts that its retainer agreements stated that the fees would be earned when step (a) and (b) were completed. All but one of the retainer agreements stated that DMPC would perform step (c) at no additional charge. ILG argues that DMPC had an obligation under the retainer agreements to complete step (c) and that a portion of the retainer fee should have been allocated to completing that work. ILG asserts that if step (c) was not completed by DMPC then a portion of the retainer fee should have been deemed unearned and returned to the clients after

they terminated their relationship with DMPC.  However, on March 31, 1998, before the client files were transferred to McNary, Morris & Smalley, ILG's founder David M. Morris wrote a letter to McNary in which Morris acknowledged that the standard "Retainer Agreement" with these clients stated that the retainer fees were deemed earned upon the completion of steps (a) and (b). (Def.'s Ex. Z at p. 2)  Morris was aware at that time of a potential conflict over the issue of earned and unearned fees

McNary testified at the trial that the fees collected from the clients "covered our expenses and plus substantial profit."  He testified that he believed that the retainer fee paid by the clients to DMPC covered the work to complete step (c).  However, on cross-examination McNary testified that after the EB-5 program clients were issued their conditional Green Cards in step (b) he considered the entire retainer could be kept by the DMPC and none of the fee had to be escrowed as unearned in order to be applied for the completion of step (c). (Tr. p. 79)  McNary later repeated that none of the fees would be escrowed for the work to be done in step (c), the clients' retainers were deemed earned by McNary and DMPC at the end of step (b) so that they could take all of the fees at the completion of step (b). (Tr. pp. 100-101)  The fees paid by these clients (and additional funds paid on their behalf by AIS) were well in excess of $2,000,000.  McNary testified that he was compensated by DMPC for these fees "like every other lawyer up to a million dollars."  McNary testified that he received seventy-five percent of any fees above a million dollars that were generated from these clients. (Tr. 105)  All of the fees were deemed earned and distributed to McNary and DMPC.

In March of 1998, McNary left DMPC because he and AIS were "unhappy" with DMPC. AIS introduced McNary to David M. Morris an attorney in Washington, D.C. with whom AIS

had a working relationship. Morris owned a law firm called Immigration Law Group[2], (Plaintiff ILG). Morris worked with a partner at ILG named Steve Smalley. McNary joined ILG and the firm did business under the name of McNary, Morris & Smalley. Although McNary testified that he did not believe that he was ever a partner of ILG, the firm's tax returns for 1998, 1999, and 2000 listed McNary as a partner. McNary testified that ILG paid all of his expenses and provided him with office space and malpractice insurance during his association with that firm.

McNary viewed the EB-5 program clients at DMPC as his clients. In April 1998, McNary and Smalley met with DMPC partners Richard Stockenberg and Dave Gamache to discuss the transfer of the EB-5 program clients to McNary at his new firm. The only work that remained to be done for these clients was step (c) the preparation and filing of Form I-829. McNary testified that he thought the purpose of the meeting was to discuss how and when the client's files were transferred and "how the money to cover the [step (c)] work on those files would be transferred as well." McNary testified that at that meeting Stockenberg and Gamache "made it clear that there was not going to be any money" turned over to McNary from the retainer fees paid by the clients.

At that meeting it was decided that McNary's new firm would send out a letter to all of the EB-5 program clients and offer them the opportunity to sever their relationship with DMPC and have McNary, Morris & Smalley take over their immigration work. The letter included a form letter for the clients to sign which directed DMPC to send their files to McNary, Morris & Smalley and directing DMPC to return any unearned fees to McNary's new law practice.

---

[2] Morris testified that he formed Plaintiff Visa Law Group, LLC in 2002 and folded ILG into that practice.

Many of the clients sent these letters to DMPC. They also entered a retainer agreement with McNary, Morris & Smalley which stated that McNary Morris & Smalley would complete the work undertaken by DMPC and that the clients would not be charged any additional fees for that work. The clients assigned to McNary, Morris & Smalley the right to recover and retain any unearned fees held by DMPC and to apply them to the legal services provided by McNary, Morris & Smalley.

Upon receipt of these letters from the clients, DMPC turned over the clients' files to McNary's office and received a receipt. DMPC never turned over any funds with the files.

McNary, Morris, & Smalley completed the step (c) work (preparation and filing of Form I-829) for most of the clients who transferred their files from DMPC. The completion of this step was much more difficult and time consuming because of changes in the Immigration and Naturalization Service's policies for the EB-5 program. The changes in policies caused AIS to become far less responsive in providing information and documentation to allow McNary, Morris & Smalley to prepare and file a Form I-829 for each client. Despite the barriers erected by these new policies, Morris testified that he got the clients' Form I-829's completed because he believed he had the obligation to do what was best for the clients. Even though the viability of many clients' eligibility to participate in the EB-5 program was called into question by the change in INS policy, completing the Form I-829 would allow the clients to keep their conditional visas until their individual eligibility to participate in the program could be reviewed. If the Form I-829's were not completed and filed the clients would lose their conditional visas. Much to Morris' credit he and his firm completed the Form I-829 work for these clients in the face of adverse circumstances and with no guarantee that he would be compensated for this work.

On August 29, 2003, ILG filed this lawsuit against DMPC. ILG seeks to recover what it alleges were unearned fees paid by the EB-5program clients for DMPC to complete step (c) of that immigration program. ILG (d/b/a McNary, Morris & Smalley) alleges that it received an assignment from the EB-5 program clients to collect these unearned fees from DMPC. ILG seeks to collect any unearned fees owed to one hundred and six clients.[3] Ninety-five of these clients' files were turned over to McNary, Morris & Smalley before August 29, 1998.[4] DMPC did not remit any payment of alleged unearned fees when it turned over the files.

DMPC argues that the retainer agreements reflect that the retainer fees were earned when the firm completed step (b). Because ILG recognized that these fees were deemed earned before it received these client's files, DMPC asserts that ILG should be estopped from pursing its claims. In the alternative, DMPC asserts that the claims of the ninety-five clients whose files were turned over before August 29, 1998 are barred by the statute of limitations to pursue their claims. DMPC seeks to offset any recovery by $500 which it alleges it was owed from each client for expenses.

*Findings of Fact*

Based on the evidence presented at the trial of this matter I find the following facts:

---

[3] The names of these clients are listed in Plaintiffs' Ex. 27.

[4] The names of the ninety-five clients has not been expressly provided in the record. Defendant has produced ninety-four names in its Exhibit N. The ninety-five can be identified however in Plaintiffs' Exhibits 11a - 11h. Next to eleven of the clients' names is the notation "no receipt." It is unclear when the files of these eleven clients were turned over to McNary, Morris & Smalley because the receipts acknowledging their delivery to McNary, Morris & Smalley could not be found. The remaining ninety-five clients files were all turned over before August 29, 1998.

DMPC completed steps (a) and (b) of the EB-5 program work that they were engaged to perform for the one hundred and six clients whose claims are at issue in this lawsuit.

These clients effectively assigned to McNary, Morris & Smalley their right to collect from DMPC any unearned retainer fees.

McNary, Morris & Smalley was a d/b/a for Plaintiff Immigration Law Group.

McNary was a partner of ILG when the clients retained ILG and their files were transferred to ILG.

McNary, Morris & Smalley / Immigration Law Group completed step (c) of the EB-5 program work for most of these clients.

McNary, Morris & Smalley / Immigration Law Group were aware at the April 1998 meeting with DMPC partners Stockenberg and Gamache that DMPC deemed the clients' retainer fees as earned and "made it clear that there was not going to be any money" turned over from the retainer fees paid by the clients.

Ninety-five clients' files were turned over to McNary, Morris & Smalley / Immigration Law Group without the return of any fees before August 29, 1998. It is unclear when the other eleven clients' files were turned over to McNary, Morris & Smalley / Immigration Law Group because DMPC could not locate the file receipts for these clients that would reflect that date of transfer.

Plaintiff's Exhibit 9 is a list of former DMPC clients for which McNary, Morris & Smalley / ILG completed step (c). Only ninety of the one hundred and six clients names appear on that list. Many of the eleven clients (for whom no receipt of transfer was produced) are not listed on Exhibit 9.

McNary testified at trial that he believed that the retainer fees were earned upon DMPC's completion of steps (a) and (b) for the clients.

As stated in his letter to McNary of March 31, 1998, ILG's Morris believed that the standard "Retainer Agreement" signed by the clients authorized DMPC to deem the retainer fees as earned after completing steps (a) and (b).

On March 15, 1999, one of the clients, Pavel Ossipov, sent a letter to the Office of Chief Disciplinary Counsel of the Missouri Bar Association asserting that DMPC's treatment of his retainer fee as earned before step (c) was completed was a violation of the Rules of Professional Conduct. On March 22, 2000, John E. Howe, Chief Disciplinary Counsel wrote to Mr. Ossipov and stated that his "investigation does not establish probable cause to believe that the attorney has violated the Rules of Professional Conduct."

### *Conclusions of Law*

#### *Equitable estoppel*

As an initial matter I find that Plaintiffs should be estopped from pursuing their claims. Equitable estoppel is a rule of law which forecloses one from denying his own expressed or implied admission which has in good faith and in pursuance of its purpose been accepted and acted upon by another. To constitute equitable estoppel three things must occur: "first, an admission, statement or act inconsistent with a claim afterwards asserted and sued upon; second, action by the other party on the faith of such admission, statement or act; and third, injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement or act." Miskimen v. Kansas City Star Co., 684 S.W.2d 394, 400 (Mo. Ct. App. 1984).

A party may be estopped by their conduct from claiming rights or benefits arising out of a

contract. <u>Sharp v. Interstate Motor Freight System</u>, 442 S.W.2d 939, 946 (Mo.1969).

Gene McNary was the conduit for all of the subject clients who retained DMPC for legal work on the EB-5 program. He testified that he deemed all of the fees to be earned at the time the legal work for step (b) was completed. At McNary's direction, or at a minimum his acquiescence, all of the clients' escrowed fees were transferred to DMPC's general account after step (b) was completed. McNary agreed that these fees should be released to the firm's account and he took his substantial share of the proceeds from those fees.

McNary then decided to leave DMPC and take these clients' files with him. At the time McNary left DMPC he knew that all of the fees had been deemed earned and that the step (c) work had to be competed for each client.

When McNary joined ILG, the principal owner of that firm, David Morris, knew that the retainer agreements reflected that the fees were earned at the completion of step (b) for the clients. (Def.'s Ex. Z at p. 2) Acting as a partner at ILG, McNary caused the client files at issue to be transferred form DMPC to ILG. When these clients were solicited by McNary to move their files to ILG both McNary and Morris knew that the retainer fees paid to DMPC were earned and distributed to McNary and the other partners at DMPC.

While he was a partner at DMPC, McNary's affirmative actions allowed the firm to treat the fees as earned and to be distributed. When McNary became a partner at ILG took the inconsistent position that a portion of the fees were not earned. McNary's actions at DMPC caused DMPC to distribute the fees.

The clients at issue were all brought to ILG by McNary. McNary and Morris recognized that the retainer fees as being earned before the clients transferred their files to ILG. The only

right assigned from the clients to ILG, through McNary, was the right to collect any unearned fees. If ILG were allowed to assert claims based on the inconsistent positions of one of its partners, McNary, it would cause an injury to DMPC which is the basis for the application of the doctrine of equitable estoppel. McNary and Morris were well aware of the treatment of these fees before they accepted the clients' legal work. ILG cannot now turn a blind eye to McNary's activity at DMPC as the basis for its claim. As result, I find that Plaintiffs are estopped from pursuing their claims against DMPC.

*Statute of limitations*

Plaintiffs have sued under the theories of quantum meruit and breach of contract.

Missouri law, under R.S.Mo. § 516.120, mandates a five-year limitation period on actions brought under a theory of quantum meruit Estate of Cates v. Brown, 973 S.W.2d 909, 913 (W.D. Mo. 1998);(unjust enrichment claims are limited to a five-year statute of limitations. Minor v. Lillard, 289 S.W.2d 1, 6 (Mo. 1956)). The five-year statute of limitations also applies to the retainer contracts at issue in this suit. R.S.Mo. § 516.120.

Ninety-five of the clients' files were turned over to McNary, Morris & Smalley before August 29, 1998. In April 1998, Plaintiffs were clearly told by DMPC that no money would be returned to these clients as unearned fees. According to McNary's trial testimony, DMPC repeatedly stated that position. At the time that these clients' files were turned over to McNary, Morris & Smalley no fees were remitted. Any unearned fees would have been due to be refunded from DMPC when it stopped its representation of these clients and turned over their files. This law suit was not filed until August 29, 2003. As a result, the breach of contract claims of these ninety-five clients are barred by the statute of limitations which began to run when their files were

turned over to McNary. Morris & Smalley.

Similarly, any claim for quantum meruit began to accrue when McNary, Morris & Smalley were retained to complete work on step (c) and assumed the responsibility to complete the work that ILG alleges DMPC had an obligation to complete. The limitations period began to run for these ninety-five clients, at the latest, upon ILG's receipt of the clients' files. As a result, the quantum meruit claims of these ninety-five clients are barred by the running of the statute of limitations for these claims.

*Quantum meruit*

The claims under quantum meruit are without merit. Quantum meruit is a remedy for the enforcement of a quasi-contractual obligation and is generally based on the principle of unjust enrichment. The essential elements of a quasi-contract or quantum meruit claim are (1) benefit conferred by one party on another, (2) appreciation or recognition by the receiving party of the fact that what was conferred was a benefit, and (3) acceptance and retention of the benefit in circumstances that would render that retention inequitable. When one party has been unjustly enriched at the expense of another, the beneficiary can be compelled to make restitution to the one conferring that benefit. Lucent Technologies, Inc. v. Mid-West Electronics, Inc., 49 S.W.3d 236, 241 (Mo. Ct. App. 2001).

DMPC had agreed to perform step (c) for the clients for no additional fee within two years after step (b) was performed. Before DMPC could perform step (c), the clients terminated DMPC as their legal counsel. DMPC could not perform step (c) for the clients because it was fired by the clients and prevented from doing any further work on their files. Because the clients terminated their attorney / client relationship with DMPC, DMPC did not have any duty to

perform step (c).

ILG asserts that because it completed step (c) for the clients it conferred a benefit upon DMPC because DMPC did not have to complete that work. I find that ILG did not bestow a benefit upon DMPC under these circumstances because (1) DMPC no longer had a duty to perform step (c) and (2) it was impossible for DMPC to complete the work because it had been fired by the clients. Although the clients' benefitted from ILG's work DMPC did not. As a result, any claim by Plaintiffs based on quantum meruit fails.

*Breach of contract*

ILG asserts that the clients' retainer agreements with DMPC contemplated that a portion of the retainer fees would be deemed unearned and reserved in escrow for the completion of step (c) of the EB-5 program work. ILG argues that DMPC breached the agreements by failing to remit any unearned fees after the clients' terminated their relationship with DMPC. DMPC asserts that the agreements contemplated that all the fees would be deemed earned at the completion of step (b) and that step (c) would be completed for no additional fee.

As noted above, the majority of theses clients' claims are barred by the expiration of the statute of limitations. The retainer agreements at issue are submitted in Plaintiffs' Exhibits 11a - 11h and state as follows:

Exhibit 11a applies to seven clients. The agreement states that the retainer fee had to be paid in full when step (b) was completed. Step (c) would be completed, within two years, for no additional charge.

I construe these retainers to deem the retainer fees earned at the completion of step (b). Plaintiffs' breach of contract claim fails as to these clients.

Exhibit 11b applies to 53 clients. The agreement states that the retainer fee had to be paid in full when step (b) was completed. Step (c) would be completed, within two years, for no additional fee.

I construe these retainers to deem the retainer fees earned at the completion of step (b). Plaintiffs' breach of contract claim fails as to these clients.

Exhibit 11c applies to fourteen clients. The agreement states that the retainer fee shall not be deemed earned until step (b) was completed. Step (c) would be completed, within two years, for no additional fee.

I construe these retainers to deem the retainer fees earned at the completion of step (b). Plaintiffs' breach of contract claim fails as to these clients.

Exhibit 11d applies to sixteen clients. These retainer agreements were not made with DMPC. They were made between the clients and a firm named Concordia Consulting Limited. The agreements state that $2,500 to $3,000 shall be distributed to McNary for filing and obtaining "an approved immigrant investor petition from INS in an AIS investor program and removal of the conditions to permanent residence in 2 years." Step (c) would be completed, within two years, for no additional fee.

I construe these fees to be earned at the completion of step (c). However, all but two of these clients' claims are barred by the statute of limitations because their files were turned over to ILG before August 29, 1998. A note on this exhibit by the names of the two remaining clients, Cheih-Wei Liu and Chun-Wei Liu, indicates that their files were turned over to ILG but there was no receipt found to determine whether the files were turned over before or after August 29, 1998. Neither of these clients' names, however, appears on Plaintiffs' Exhibit 9 which is a list of the

clients for whom ILG completed step (c). There is no evidence which Plaintiffs have presented to me that step (c) was completed for these clients. I find that Plaintiffs' breach of contract claim fails as to these two clients.

Exhibit 11e applies to one client, Alice L. Liu. The agreement states Ms. Liu was to pay $10,000 for steps (a) and (b) and an additional $5,000 for step (c).

Ms. Liu's claim is barred by the running of the statute of limitations. In addition, Plaintiffs' Exhibit A reflects that Ms. Liu only paid $10,000 (the money paid on her behalf by AIS is not part of this lawsuit under my previous ruling in this case). Although at the trial Plaintiffs questioned DMPC partner Dave Gamache about the accuracy of the payment reflected in this exhibit, Plaintiffs never provided evidence that Liu in fact paid the additional $5,000 for step (c). Plaintiffs' breach of contract claim fails as to this client.

Exhibit 11f applies to one client, Albracht Buhler. The agreement was made between Buhler and a firm named Shangai Fudan V & Business Consultation Co., LTD. The agreement states that $2,500 shall be distributed to McNary for filing and obtaining "an approved immigrant investor petition from INS in an AIS investor program and removal of the conditions to permanent residence in 2 years."

I construe this fee to be fully earned only at the completion of step (c). However, Mr. Buhler's claim is barred by the statute of limitations because his file was turned over to ILG before August 29, 1998. Plaintiffs' breach of contract claim fails as to this client.

Exhibit 11g applies to one client, Bhartendu Desai. The agreement states that the retainer fee must be paid in full when step (b) was completed. Step (c) would be completed, within two years, for no additional fee.

I construe this retainer to deem the retainer fee to be fully earned only at the completion of step (b). Plaintiffs' breach of contract claim fails as to this claim.

Exhibit 11h applies to 13 clients. This exhibit lists the fees paid by these clients as $0 for six clients; $2,500 for one client; $4000 for one client; $7,500 for one client; $8,500 for one client; $10,000 for two clients, and $10,922.50 for one client. No retainer agreement was produced for these clients.

Plaintiffs failed to present any evidence of what the retainer agreement terms were between these clients and DMPC. As a result, I find that Plaintiffs' breach of contract claim fails as to these clients.

*Defendant's counterclaim for a set-off of fees paid on behalf of these clients*

DMPC asserts that the retainer agreements required the EB-5 program clients to refund DMPC up to $500 for costs incurred for the handling of their cases. DMPC seeks a set-off of these costs for any award to Plaintiffs. DMPC filed Exhibit II in support of this claim.[5] Because Plaintiffs have not prevailed in their claims, there is not judgment against DMPC on which to apply a set-off. Plaintiffs are not otherwise liable for the costs incurred by DMPC on behalf of the clients.

*Conclusion*

Plaintiffs' claims fail based on estoppel, the running of the applicable statutes of limitations and the construction of the retainer agreement contracts. As a matter of fact and law, DMPC did

---

[5]The exhibit is comprised of accounts receivable reports for most of the clients at issue in this case. The reports are a cumbersome exhibit in that entail hundreds of pages of entries which do not clearly reflect the costs incurred and owed on behalf of the clients. Many of the reports show costs for each client ranging from well below $500 to well in excess of $500. Many of the reports reflect that AIS paid costs on behalf of the clients.

not have a duty to perform step (c) for its former clients after they terminated their relationship with DMPC. Any claims for unearned retainers were either unfounded on the merits or precluded by the running of the statute of limitations. The Chief Disciplinary Counsel of the Missouri Bar concluded that DMPC's position regarding the retainer fees did not violate the Rules of Professional Conduct

Accordingly,

**IT IS HEREBY ORDERED** that a Judgment shall be entered on behalf of Defendants in this matter.

**IT IS FURTHER ORDERED that** all other pending motions in this matter are **DENIED** as moot.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 30th day of March, 2006.